# Eugene Wendnagel and William Wendnagel, trading as Wendnagel & Company, Defendants in Error, v. M. F. Schiavone, Plaintiff in Error.

## Gen. No. 21,526.

1.  FRAUDS, STATUTE OF, § 74*—*what constitutes a sufficient memorandum.*  Where a written contract for the furnishing of material and labor by one and payment for same by the other party thereto was indorsed by a third party "O. K.," with his name and the date of such indorsement, *held* that the indorsement was a sufficient memorandum under the Statute of Frauds.

2.  EVIDENCE, § 322*—*when parol evidence is admissible to explain terms of guaranty on contract.*  In an action brought on an alleged guaranty of a written contract for the furnishing of material and labor by one and payment for same by another party thereto, *held* that parol evidence was admissible to show that defendant, who had written the words "O. K.," his name and the date of indorsement on the contract, intended thereby to guarantee payment under the contract.

Error to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1915.  Affirmed.  Opinion filed February 7, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
    Vol. CCIII 25

I. B. PERLMAN, for plaintiff in error.

ADAMS, CREWS, BOBB & WESCOTT, for defendants in error; GEORGE B. McKIBBIN, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a writ of error to review a judgment rendered in the Municipal Court of Chicago for the sum of $629.24 in a suit by Eugene Wendnagel and William Wendnagel, doing business as Wendnagel & Company (hereinafter called plaintiffs) against M. F. Schiavone (hereinafter called defendant) brought upon an alleged contract of guaranty. The statement of claim of the plaintiffs recites that they furnished and delivered to M. F. Schiavone at his special instance and request certain materials for which there is a balance due of $757.54. The defendant in his affidavit of merits admitted his liability for one item amounting to $150 and as to the remaining items pleaded the general issue and the Statute of Frauds.

The evidence for the plaintiff shows that on August 7, 1914, the plaintiff and Peter Nasiopulos and John Ahamnos entered into a written contract whereby the plaintiffs were to furnish and set certain structural iron, for which Nasiopulos and Ahamnos were to pay the sum of $560; that owing to Nasiopulos and Ahamnos being behind in their payments on a prior contract, plaintiffs refused to go on with the contract of August 7, 1914; that the defendant thereupon telephoned to the plaintiffs and said that he was taking a lease of the building and wanted to know why the plaintiffs did not go ahead with the work; that plaintiffs told him they could not go ahead until they got some money on the original contract; that the defendant said they should go ahead and that he would guar-

antee it; that the plaintiffs still held up the matter; that a few days later Nasiopulos and the defendant went to the office of the plaintiffs and the defendant wrote his O. K. on the contract of said August 7, 1914, and said he would stand good for the money; that afterwards the goods were accordingly delivered.

The only material evidence introduced by the defendant was the testimony of the defendant himself which was, in general, a denial of the testimony of the plaintiff's witness in regard to what was said at the time the O. K. was written on the contract in question. That denial, however, does not seem to have been positive but to have been in part qualified. The contract which was offered in evidence by the plaintiff, and upon which is written the "O. K." of the defendant, is as follows:

"CONTRACT, Made and concluded the 7th day of August one thousand nine hundred fourteen by and between WENDNAGEL & COMPANY, 22nd and Jefferson Sts., of the City of Chicago, County of Cook and State of Illinois, party of the first part, and John Ahamnos and P. Nasapoulos, of the City of Chicago, County of Cook and State of Illinois, party of the second part, in these words: The said party of the second part covenants and agrees to and with the said party of the first part, to furnish and set the structural iron for the two new balconies for the Apollo Theatre, 40th Ave. near North Ave., including cutting of holes but not patching of same.

"And the said party of the first part covenants and agrees to pay unto the said party of the second part, for the same, the sum of Five hundred sixty ($560.00) Dollars, lawful money of the United States.

"This price includes only structural material as shown on Plan which we made and submitted to Archt. Wm. A. Bennett. Any material added to be charged as an extra.

"TERMS: 85% as the work progresses, and the balance 15 days after completion of contract.

"IN WITNESS WHEREOF, the parties to these present

have hereunto set their hands and seals the day and year first above written.

"Sealed and delivered in the presence of

Wendnagel & Co.

By    James Magnusen
      Peter Nasiopulos
      John Ahamnos.

"O. K.
    M. F. Schiavone,
    September 3/14."

At the trial the defendant made certain objections to the evidence to the effect that the indorsement on the above-mentioned contract of August 7, 1914, could not be varied by parol testimony. The court overruled the objections and entered judgment in favor of the plaintiff in the sum of $697.24.

It is contended by the defendant that the words, "O. K. M. F. Schiavone, Sept. 3/14" do not constitute a sufficient memorandum to comply with the Statute of Frauds and that oral testimony was not admissible to explain and amplify them. There seems to be no doubt but that parol testimony is admissible for the purpose of explaining or removing any uncertainty or ambiguity in a written contract, and that it was proper for the plaintiff in this case to explain and interpret, by competent testimony, the meaning of the words in question. Wigmore on Evidence, sec. 2463.

The danger in such cases is that in explaining and interpreting, something may be added, and the latter, of course, is not allowed. Commonly, of course, the law allows all abbreviations to be explained by oral testimony. The words, "O. K. M. F. Schiavone, Sept. 3/14" as they stood at the foot of the contract were ambiguous and uncertain and the plaintiffs were entitled to offer appropriate evidence to explain and interpret them. The witness for the plaintiff testified as follows:

"He (the defendant) says he would stand good for the money and so he wrote his O. K.

(Q)    And upon that he put his O. K. there?

(A)    Yes sir."

The trial judge, we assume, concluded that the testimony of the witness for the plaintiffs, which testimony purported to recount what actually was said at the time the letters "O. K." were written by the defendant, explained and interpreted the meaning of those letters as a written promise that he, the defendant, would pay that which was provided for in the written contract itself.

In the case of *Popper v. Spelz,* 184 Ill. App. 35, cited by the defendant, the court held, and according to the law, that the defendant having proved that the one who wrote the "O. K." on a certain order had refused to write it as a guaranty, there was, therefore, no liability.

In *Penn Tobacco Co. v. Leman* (Ga.), 34 S. E. 679, p. 680, the court said:

"The contract relied on by the plaintiff, evidenced by the letters 'O. K.' and the signature of the defendants, was ambiguous, and therefore parol evidence will be heard to explain the patent ambiguity appearing upon the paper.  If the parties agreed among themselves, as alleged, that this signature and these letters should have a definite meaning as between themselves, then the signature and the letters so entered upon the order would constitute a contract between them, and the defendants would be liable to the plaintiff if the contract thus entered into was of the character alleged in the declaration."

Inasmuch as the meaning of words is always relative, it is only reasonable that parol testimony should be admitted for the purpose of eliciting the truth, whenever upon the face of the document there arises obvious doubt.  The need of the court is to discover the special sense in which the parties mutually have used the words; and in discovering that sense, to re-

quire sufficient and allow only appropriate proof; for in that way only may the true meaning of the writing be understood and enforced.

We are of the opinion that the trial judge was justified in admitting the evidence objected to by the defendant and was also justified in his conclusion that the indorsement on the contract constituted a written guaranty.

Finding no errors in the record which justify a reversal, the judgment will be affirmed.

*Affirmed.*